**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | Action No. 2:20-po-0004-RMG |
| Appellee, | ) | |
| v. | ) | **ORDER AND OPINION** |
| Reed C. Tanner, | ) | |
| Appellant. | ) | |

Before the Court is Reed Tanner's appeal of his judgment of conviction of disorderly conduct in violation of 38 C.F.R. § 1.218. (Dkt. No. 11.) For the reasons set forth below, the Court affirms the judgment and denies Tanner's appeal.

**I.    Background**

On January 16, 2020, Appellant Reed Tanner was at the Ralph H. Johnson Veterans Medical Center in Charleston, South Carolina, to receive regular medical treatment. He interacted with Joann Reveral, a nurse who had previously treated Tanner but was not treating him that day. Arising from that interaction, Tanner was issued a Violation Notice on January 22, 2020 for violation of 38 C.F.R. § "1.218(b)(11) . . . disorderly conduct, unwanted touching + impeding movement of a VA employee." (Dkt. No. 1.)  On January 3, 2020, Tanner was tried before the Honorable Robert Buchanan, United States Magistrate Judge, and found guilty of Disorderly Conduct in violation of § 1.218(b)(11). (Dkt. No. 3.)  Tanner now appeals the trial judge's denial of his motion for directed verdict, the judgment of conviction, and the sentence, arguing that there was insufficient evidence at trial. (Dkt. No. 11 at 6.)  The Government has responded in opposition. (Dkt. No. 17.)

-1-

## II.    Legal Standard

"An appellate review conducted by a district court after a bench trial before a magistrate judge is not a trial *de novo*; rather, the district court utilizes the same standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005); *see also* Fed. R. Crim. P. 58(g)(2)(D).  Accordingly, this Court reviews the Magistrate Judge's findings of fact for clear error and reviews issues of law *de novo*. *Bursey*, 416 F.3d at 306.  The review of a factual finding for "clear error" is "a very deferential standard of review; allowing [the court] to reverse only if it is left with a definite and firm conviction that a mistake has been committed." *United States v. Horton*, 693 F.3d 463, 474 (4th Cir. 2012).

"A defendant challenging the sufficiency of the evidence to support his conviction bears a 'heavy burden.'" *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (*quoting United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995)).  "In assessing the sufficiency of the evidence presented in a bench trial, [the reviewing court] must uphold a guilty verdict if, taking the view most favorable to the Government, there is substantial evidence to support the verdict." *Elliott v. United States*, 332 F.3d 753, 760-61 (4th Cir. 2003).  "'Substantial evidence' means 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Armel*, 585 F.3d 182, 184 (4th Cir. 2009) (*quoting United States v. Burgos*, 94 F.3d 949, 862 (4th Cir. 1996) (en banc)).  That is, "in assessing a challenge to the sufficiency of the evidence, [the reviewing court] view[s] the evidence in the light most favorable to the government in order to decide whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Garcia-Ochoa*, 607 F.3d 371, 376 (4th Cir. 2010) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

When evaluating facts presented at trial, the reviewing court considers "both circumstantial and direct evidence, and allow[s] the government all reasonable inferences that could be drawn in its favor." *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008). "[I]t is the role of the factfinder, not the appellate court, to resolve conflicts in testimony, weigh the evidence, and judge the credibility of witnesses." *United States v. Manbeck*, 744 F.2d 360, 392 (4th Cir. 1984). When reviewing the Magistrate Judge's interpretation of a law, the review is *de novo*. *United States v. Myers*, 280 F.3d 407, 416 (4th Cir. 2002) ("A court of appeals reviews questions of statutory interpretation *de novo*."). Although the instant appeal deals with challenges to an administrative regulation rather than a statute, the same principles of review apply. *United States v. Lofton*, 233 F.3d 313, 317 n.4 (4th Cir. 2000) ("The interpretation of the regulation is a legal question reviewed *de novo*.")

### III.    Discussion

### A.    Tanner's Appeal of the Denied Directed Verdict and Appeal of the Judgment of Conviction are Denied.

The Court must first clarify the regulation at issue. 38 CFR § 1.218 governs "Security and Law Enforcement at VA Facilities." As is typical in criminal legislation, the regulation consists of two sections: Section (a) sets forth the chargeable offenses, and Section (b) provides their accompanying penalties. *See United States v. Agront*, 773 F.3d 192, 196 (9th Cir. 2014) (noting that § 1.218(b)(11) should be "read in conjunction with § 1.218(a)(5), the substantive provision defining 'disturbances'"); *Griffin v. Dep't of Veterans Affairs*, 274 F.3d 818, 819 (4th Cir. 2001) ("A VA regulation, 38 C.F.R. § 1.219(a), broadly proscribes many forms of expression, absent specific authorization, on all VA property."). In this case, however, Tanner's Violation Notice and judgment of conviction were for violation of § 1.218(b), the regulation's penalty section, instead of for violation of § 1.218(a), the regulation's chargeable conduct. This is material to the

instant appeal because § 1.218(b) and § 1.218(a) define the prohibited conduct differently: the § 1.218(b) reference to fineable "disorderly conduct" is narrower than the § 1.218(a) definition of prohibited "Disturbances."  Although the parties did not raise this issue at trial, and do not raise it here on appeal, it is now incumbent on the Court to clarify the governing law as follows.

Section 1.218(a)—the chargeable conduct section—sets forth the "rules of conduct" on VA property and prohibits:

> Disturbances: Conduct on property that creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwanted loitering, sleeping, or assembly is prohibited. . . .  Failure to leave the premises when so ordered constitutes a further disturbance within the meaning of this rule, and the offender is subject to arrest and removal from the premises.

38 C.F.R. § 1.218(a)(5).

Section 1.218(b)—the penalties section—provides a "Schedule of offenses and penalties":

> Conduct in violation of the rules and regulations set forth in paragraph (a) of this section subjects an offender to arrest and removal from the premises. Whomever shall be found guilty of violating these rules and regulations while on any property under the charge and control of VA is subject to a fine as stated in the schedule set forth herein or, if appropriate, the payment of fixed sum in lieu of appearance (forfeiture of collateral) as may be provided for in rules of the United States District Court. Violations included in the schedule of offenses and penalties may also subject an offender to a term of imprisonment of not more than six months, as may be determined appropriate by a magistrate judge of the United Sates District Court.

38 C.F.R. § 1.218(b).  In addition to these penalties, § 1.218(b) goes on to allow for a $250 fine for conduct constituting "disorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility." 28 C.F.R. § 1.218(b)(11).

Tanner's Violation Notice and judgment of conviction for "violating CFR § 1.218(b)(11)" (Dkt. Nos. 1, 3), but should have been for violating § 1.218*(a)(5)*. *See, e.g.*, *United States v. Irby*, 269 Fed.Appx. 246, 2008 WL 656613 (4th Cir. 2008) (affirming conviction of violating § 1.218(a)(5)); *Griffin v. Dep't of Veterans Affairs*, 106 Fed.Appx. 816, 2004 WL 1699784 (4th Cir. 2004) (affirming conviction of violating § 1.218(a)(14)). The Court must now consider *sua sponte* whether and how this discrepancy impacts Tanner's instant appeal.

First, as to the Violation Notice, its citation to § 1.218(b)(11) may be merely a "technical matter" so long as Tanner's conduct also fits into the § 1.218(a)(5) definition of "Disturbances." *United States v. Williams*, 892 F.2d 1044 (Table), 1990 WL 000811, at *2 (6th Cir. 1990) (affirming district court's review of appeal from conviction by Magistrate Judge). For instance, some courts have found that a defendant charged with violating "§ 1.218(b)(11)" was nonetheless charged with a "convictable offense" because, considering evidence of that defendant's particular conduct, "the language of the penalty section is similar to that of the substantive offense section and both sections explicitly prohibit the conduct for which [he] was convicted." *Williams*, 1990 WL 000811, at *2; *see also United States v. Fentress*, 241 F. Supp. 2d 526 (D. Md. 2001) (arresting officer's citation to penalty provision rather than to provision specifying substantive offense itself did not invalidate conviction), *aff'd United States v. Fentress*, 69 Fed.Appx. 643, 2003 WL 21711391 (4th Cir. 2003). Therefore, if Tanner's particular conduct does not fall within the definition of § 1.218(a)(5) chargeable "Disturbances," then the Violation Notice citing him to § 1.218(b)(11) would not have provided sufficient notice of the charge against him. *See, e.g.*, *United States v. Puch*, 2021 WL 867038, at *2 (6th Cir. Jan. 21, 2021) (reviewing defendant's challenge to the sufficiency of notice in Violation Notice citing to § 1.218(b)(11)). But Tanner did not raise that constitutionality argument at trial and does not raise it here on appeal.

Regarding the judgment of conviction—which found Tanner guilting of violating "§ 1.218(b)(11)" instead of § 1.218(a)(5)—the Court must consider whether Tanner's conduct falls within the § 1.218(a)(5) definition of "Disturbances" to determine whether to affirm the judgment. As discussed, the § 1.218(a)(5) definition of chargeable "Disturbances" is broader—it encompasses more types of conduct—than does the § 1.218(b)(11) reference to fineable "disorderly conduct."[1]

At trial, the Magistrate Judge denied Tanner's motion for a directed verdict because:

> [W]e've heard testimony that [Reveral] was blocked, albeit for short periods of time. We've heard testimony that she was attempting to explain to the defendant that he needed to go otherwise, and he was resistant for whatever reason. And we obviously have heard testimony that she was prevented from the normal operation of - - of the facility by having to change her route and move to the policeman.

(Dkt. No. 9 at 57-58.) The trial judge then also concluded that the evidence supported finding Tanner guilty of Disorderly Conduct beyond a reasonable doubt:

> I'm going to find the defendant guilty of his disregard of the sign, his disregard of the requests and instructions of [Reveral], his use of the hand sanitizer that did cause a difference in the way she would have exited the building. She obviously had to change the way she would have - - normally have gone to her car; so, respectfully, [the Court] would find him guilty of the disorderly conduct.

(Dkt. No. 9 at 62.) The trial judge then issued an order of final judgment, finding Tanner guilty of violating § 1.218(b)(11). (Dkt. No. 3.)

---

[1] But the § 1.218(b)(11) reference to "disorderly conduct" includes conduct that "tends to impede" normal operations, whereas the § 1.218(a)(5) definition of "Disturbances" includes conduct that actually "impedes" normal operations. Courts have, nevertheless, narrowed the delta between the two by interpreting conduct that "tends to impede" normal operations as conduct that actually "poses an actual or imminent interference with that facility's operation." *Agront*, 773 F.3d at n.5; *see also Grayned v. City of Rockford*, 408 U.S. 104, 111 (1972) ("Were we left with judge the words of the ordinance, we might be troubled by the imprecision of the phrase 'tends to disturb.' . . . We think it proper to conclude that the Supreme Court of Illinois would interpret the Rockford ordinance to prohibit only actual or imminent interference with the peace or good order of the [premises].").

The evidence at trial consisted of testimony from Major Darryl Stark, the U.S. Department of Veterans Affairs Police Services supervisor who investigated Tanner's conduct and provided a declaration supporting the Violation Notice; testimony from Joann Reveral; and a 2-minute and 2-second closed-circuit video showing Tanner and Reveral exiting the VA Center and moving through the loading dock. Reveral testified[2] that Tanner repeatedly rubbed her shoulders, arms and back with his own hands, making her "soaking wet" with an unknown liquid. (Dkt. No. 9 at 34, 69.) She further testified that Tanner obstructed her use of two sets of doors leading from the building onto the loading dock, and then continued to follow her as she repeatedly attempted to exit the loading dock area into the street. (*Id*. at 26, 30-32.) One of these doors was clearly marked "Not a Patient Entrance or Exit." (*Id*. at 9.) This testimony was corroborated by the security video. Raverel also testified that she repeatedly instructed Tanner that he "cannot follow" and to "stop," which he ignored. (*Id*. at 24.)[3]

This evidence clearly supported a finding of conduct that falls within the definition of "Disturbances" prohibited by § 1.218(a)(5): obstructing the usual use of entrances, impeding Raveral's performance of her duties, unwanted loitering, and failure to leave the premises when so ordered. *See, e.g.*, *United States v. Hawkins*, 2008 WL 207842, at * (E.D.N.Y. Jan. 24, 2008) (affirming Magistrate Judge's conviction of violating § 1.218(b)(11) where appellant "attempted to open the door to the emergency room, which is a restricted area" and followed a nurse into another area of the VA hospital); *United States v. Roper*, 2003 WL 24017061, at *2-3 (E.D.N.Y. Nov. 24, 2003) (Magistrate Judge finding defendant guilty of violating § 1.218(a)(5) where

---

[2] The Magistrate Judge did not make a credibility finding, but this Court has no reason to find Raveral was not a credible witness nor is that inquiry warranted under the standard of review.

[3] Much testimony and argument was offered regarding how Tanner's conduct made Raveral feel, but there is no subjective element to finding a violation of § 1.218.

primary witness testified that defendant "came up closer into [his face than] normally allowed," "about a foot away"); *Fentress*, 241 F. Supp. 2d at 528 (affirming conviction of disorderly conduct where appellant "ignored orders" from an officer to stop interacting with VA hospital nurse).

For this reason, the Court finds that Tanner has failed to demonstrate that, viewing the evidence in the light most favorable to the Government, no rational trier of fact could have found the essential elements of violating § 1.218(a)(5) satisfied beyond a reasonable doubt.

**B.     Tanner's Appeal of the Sentence is Denied.**

Tanner's appeal of his sentence is also denied for three reasons.  First, there is no sentence to appeal because no sentence has been imposed; the Magistrate Judge elected to hold sentencing in abeyance pending resolution of this appeal. (Dkt. No. 3 at 2.)  Second, Tanner has potentially waived any appeal of a sentence of community service because his counsel stated he had "no objection" to it at trial and agreed that the Magistrate Judge "would have that discretion." (Dkt. No. 9 at 66-67.)  "Both parties have agreed that the Court may impose a sentence of community service in lieu of a monetary penalty." (Dkt. No. 3 at 1.)[4]  The parties reached this agreement when the trial judge directed them to confer on sentencing options permissible under the regulation and

---

[4] The Court is compelled to address whether the parties' agreement to impose community service in lieu of a fine is lawful.  Regarding the fine, counsel for the Government told the Magistrate Judge that he has "discretion" to impose a fine lesser than $250 because the regulation "says something to the effect of whatever amount you determine to be appropriate." (Dkt. No. 9 at 64.)  That is not the law.  Section 1.218(b) provides that the offender "*is subject* to a fine as stated in the schedule set forth herein," and the fine for "disorderly conduct," as it is defined in § 1.218(b)(11), is "$250."  And the Magistrate Judge made a finding that Tanner's conduct was "disorderly conduct," albeit it in the context of the judgment rather than the penalty.  Regarding community service, the parties are correct that a term of imprisonment is not mandatory under § 1.218(b), which provides that a conviction "*may also subject* an offender to a term of imprisonment of not more than six months, as may be determined appropriate by a magistrate or judge of the United States District Court." (emphasis supplied.)  Therefore, at sentencing, Tanner must be fined $250 (if the Magistrate Judge again makes a finding that his conduct constitutes "disorderly conduct" as defined at § 1.218(b)(11)), and Tanner may, but need not, be subject to a term of imprisonment.

jointly propose a penalty later that day. (Dkt. No. 9 at 68-69.) Third, a sentence of community service, which the Magistrate Judge contemplated would take into account Tanner's physical disability (Dkt. No. 9 at 67), would represent a more lenient sentence than the term of imprisonment allowable under § 1.218(b).

## IV.     Conclusion

For the foregoing reasons, Reed Tanner's appeal of his conviction of disorderly conduct in violation of 38 C.F.R. § 1.218 (Dkt. No. 11) is **DENIED**. The judgment of conviction (Dkt. No. 3) is **AFFIRMED**, except to clarify that Tanner is found guilty of violating 38 C.F.R. § 1.218(a)(5), which subjects him to penalties as provided by 34 C.F.R. §§ 1.218(b) and (b)(11). This matter is remanded to the Magistrate Judge for sentencing.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

April 23, 2021
Charleston, South Carolina